UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DELANTE DARNELL HIGGENBOTTOM,

        Plaintiff,

v.

RACINE COUNTY SHERIFF
DEPARTMENT, CHRIS SCHMALING,
ANTONIO CHAVEZ, and
RACINE COUNTY JAIL,

        Defendants.

Case No. 13-CV-1333-JPS

ORDER

1.  BACKGROUND

  The plaintiff, a Wisconsin inmate proceeding *pro se*, filed a Section 1983 civil rights complaint on November 26, 2013. (Docket #1). In it, the plaintiff alleged a variety of claims against the defendants for failing to heed a state court order granting him temporary release from the Racine County Jail—he was a pretrial detainee at the time—to attend his sister's funeral. *Id.* On January 23, 2014, the Court screened his complaint pursuant to 28 U.S.C. § 1915A(a) and allowed the plaintiff to proceed on two of his claims: (1) a Fourteenth Amendment due process claim, and (2) a Fourteenth Amendment cruel and unusual punishment claim. (Docket #8 at 1).

  On February 28, 2014, after both parties consented to magistrate jurisdiction, the Court entered an order reassigning this case to Magistrate Judge Callahan. (Docket #16). Shortly thereafter, Judge Callahan entered a scheduling order setting the dispositive motion deadline as July 28, 2014. (*See* Docket #22). That deadline was modified three times (*see* Docket #30, #34, #45); ultimately, dispositive motions were due February 6, 2015 (Docket #34).

On February 5, 2015, the defendants moved for summary judgment on both of the plaintiff's claims. (Docket #56). That same day, the plaintiff requested an extension of time to file his summary judgment motion. (Docket #61). The plaintiff's request was granted on February 9, 2015, and he was required to file a summary judgment motion by March 6, 2015. (Docket #62). Ultimately, the plaintiff did not file a motion for summary judgment.

On March 3, 2015, the plaintiff did request an extension to file his brief in opposition to the defendants' summary judgment motion; that request was granted and the new deadline was set as April 28, 2015. (Docket #64).

Due to Judge Callahan's retirement, the case was reassigned to Magistrate Judge Duffin on March 19, 2015, and, as such, the parties were required to re-file their consent to magistrate jurisdiction. Because the plaintiff refused to consent (Docket #67), the case was returned to this Court on March 26, 2015.

Shortly before the plaintiff's brief in opposition was due, he once again requested an extension of time; the plaintiff asked for an additional forty-five (45) days. (Docket #68). On April 29, 2015, the Court granted the plaintiff a ten-day extension instead of the requested forty-five (45) days, "given that the plaintiff ha[d] already received two extensions of time related to summary judgment." (Docket #69 at 1). In addition, the Court made clear no further extensions would be granted. *Id.* No matter, because shortly after the Court entered the aforementioned order, the plaintiff's brief in opposition was timely filed (Docket #70).

The defendants' motion for summary judgment was fully briefed and ready for disposition on May 13, 2015. (Docket #73). The Court will grant the defendants' motion for summary judgment, for the reasons outlined below.

2. UNDISPUTED FACTS[1]

The plaintiff was booked into the Racine County Jail on February 25, 2013, after he was charged with armed robbery, carrying a concealed weapon, and possession of a firearm by a felon. (Docket #57 at ¶ 15). On October 6, 2013, jail staff informed the plaintiff that his youngest sister had passed away. (Docket #71 at ¶ 20). On October 9, 2013, the plaintiff's family contacted his attorney to see if the attorney could request a furlough for the plaintiff to attend the wake and the funeral, *id.* at ¶ 21, which were scheduled for October 11, 2013, at 10:00 a.m. and 11:00 a.m., respectively (Docket #57 at ¶ 24). On October 9, 2013, Racine County Circuit Court Judge Timothy Boyle entered an order granting the plaintiff's request for a furlough. (Docket #57 at ¶ 23). Judge Boyle's order states, in relevant part:

> WHEREAS, the defendant's sister passed away, the defendant must attend her wake and funeral October 11th, 2013 and the defendant, is currently incarcerated at the Racine County Jail and must attend the services, he must be transported and escorted at all times.
>
> NOW THEREFORE, IT IS HEREBY ORDERED that the Racine County Sheriff's Department transport the defendant, Delante Higgenbottom, from the Racine County Jail to the church for the purpose of attending his sisters wake and funeral and to escort the defendant at all times. Defendant is to be returned to the Racine County Jail no later than 2:30 p.m.
>
> IT IS FURTHER ORDERED that Defendant is to be allowed to wear civilian clothing.

(Docket #70, Ex. 7 at 4-5).

---

[1] The undisputed facts are taken from the parties' proposed findings of fact (Docket #57, #71), unless properly objected to in their respective responses. (Docket #72, #74).

Judge Boyle's order was hand-delivered to the Sheriff's Office that same day, October 9, 2013. (Docket #71 at ¶ 23). On October 10, 2013, Sergeant Antonio Chavez ("Sgt. Chavez") sent an email to jail command staff informing them that the plaintiff was approved for a furlough, and that "Sgt. Bauer states he can have the RASO[2] Conveyance team take care of this." (Docket #70, Ex. 7 at 23). Sgt. Chavez's email concludes with: "Is there any problems [sic] with this?" *Id.*

Jail command staff was at an off-site training event during the day on October 10, 2013, and thus did not read Sgt. Chavez's email until later that evening—*i.e,* the evening before the wake and funeral. *Id.* at ¶ 24; (Docket #57 at ¶ 30). Sometime that evening, Sheriff Chris Schmaling ("Sheriff Schmaling") received an email from his chief deputy about the furlough, which stated the following: "I don't think we should do this. When I was the jail captain I denied virtually all of these. It's dangerous and we don't have the extra staff to do it." (Docket #70, Ex. 7 at 20).

The next morning around 9:30 a.m.—the morning of the funeral and wake—Sgt. Chavez had the plaintiff escorted from the jail's day room to a holding cell, to await transport. (Docket #57 at ¶ 33-35). At 9:39 a.m., Sheriff Schmaling replied to the chain of emails about the funeral transport and denied the plaintiff's furlough. *Id.* at ¶ 37. Sheriff Schmaling's reply states: "This transport is dangerous on many levels and would place our staff, community, and inmate at an unnecessary safety risk. Transport denied." (Docket #70, Ex. 7 at 20). When Sheriff Schmaling sent the email, he did not know that the plaintiff had been moved to a holding cell to await transport. (Docket #57 at ¶ 38).

---

[2] Presumably RASO stands for Racine County Sheriff's Office.

Around 9:50 a.m., jail command staff alerted Sgt. Chavez that Sheriff Schmaling had denied the furlough. *Id.* at ¶ 41. At 10:15 a.m., after spending approximately forty-five minutes in the holding cell, the plaintiff was informed that he would not be transported to the funeral after all. *Id.;* (Docket #71 at ¶ 44-45). During the plaintiff's trip back to his cell, he became upset, *id.* at ¶ 61, although the parties dispute how the events on this trip transpired. (*See* Docket #57 at ¶¶ 43-48); (Docket #71 at ¶ 46-69). Despite the plaintiff's emotions, however, he complied with all of the orders given to him by jail staff. *Id.* Eventually the plaintiff was placed in handcuffs and officers locked down the plaintiff's floor of the jail. (Docket #57 at ¶¶ 51-52). The plaintiff was returned to his jail cell without incident. *Id.* at ¶54. The lockdown ended after three hours. *Id.* at ¶ 55. The plaintiff later filed grievances regarding the denial of his furlough, which the jail staff either did not receive, or chose not to respond to. (Docket #71 at ¶¶ 79-82).

The denial of the plaintiff's furlough was not an isolated incident; since 2013, there have been at least five other instances where inmates were not permitted to temporarily leave the Racine County Jail for the purpose of attending a funeral. (Docket #57 at ¶ 57). During that same time frame, two inmates were granted a funeral furlough, but "these inmates faced less serious charges than plaintiff and they were permitted only to attend private visitations." *Id.* at ¶ 58.

According to the defendants, "requests and orders pertaining to funeral furloughs are reviewed on an individual basis, but they are routinely denied…due to concerns that release would threaten institutional order or public safety." *Id.* at 59. An additional consideration is whether the jail has sufficient time between the request or order and the funeral to make transportation arrangements. *Id.* Funeral furloughs, according to Racine

County Jail policy, "may not be denied on a particular occasion or to a particular inmate in order to cause psychological distress, or with deliberate indifference to the individual's mental health." *Id.* at ¶ 14.

3.  SUMMARY JUDGMENT LEGAL STANDARD

When a party files a motion for summary judgment, it is their "contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender LLC v. Nat. Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a))."Material facts" are those facts which "might affect the outcome of the suit," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to have a genuine dispute about a material fact, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 586 (1986); namely, the party in opposition "must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e).

"Where…the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claims." *Hotel 71 Mezz*, 778 F.3d at 601. When analyzing whether summary judgment should be granted, a court must draw all reasonable inferences from the materials before it in favor of the non-moving party. *See Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989).

4. DISCUSSION

The defendants have moved for summary judgment on both of the plaintiff's claims—namely, his Fourteenth Amendment due process and cruel and unusual punishment claims—and argue that no constitutional violation occurred because: (1) the plaintiff had no liberty interest in a funeral furlough; and (2) there is no evidence that the defendants denied the plaintiff's furlough maliciously or with deliberate indifference to his mental health. The defendants also argue that, even if the Court were to find a constitutional violation occurred, they are still entitled to qualified immunity because the plaintiff cannot show that the right to a funeral furlough was clearly established at the time the events in this case occurred.

The Court will first address the plaintiff's Fourteenth Amendment due process claim first, before turning to his cruel and unusual punishment claim.

Before doing so, however, it is necessary to address one of the defendants' other arguments. Namely, that the Racine County Sheriff and Racine County Jail are not proper parties to this action. This is so, according to the defendants, because neither party is a suable entity under Section 1983. On this issue, the Court agrees; neither a jail, nor a sheriff's department is a "person" under Section 1983, and thus is not a suable entity under the same. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Pope v. Racine Corr. Inst.*, No. 12-CV-331, 2012 WL 4470214, at *2 (E.D. Wis. Sept. 27, 2012) ("Racine Correctional Institution is not a proper defendant.") (citing *Powell v. Cook Cnty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Liske v. Wisconsin*, No. 08-CV-252, 2008 WL 905229, at *1 (E.D. Wis. Apr. 2, 2008) (finding Oshkosh Correctional Institution was not a suable entity); *Maier v. Wood County Courthouse*, No. 07-CV-580, 2007 WL 3165825, at *2 (W.D. Wis. 2007) ("[P]risons and courthouses are not suable entities because they are not persons capable of accepting service of plaintiff's complaints or responding

to them."). For the remainder of the Court's analysis, then, "the defendants" will refer only to Sheriff Schmaling and Sgt. Chavez.

    4.1  The Plaintiff's Fourteenth Amendment Claim

  The plaintiff argues that by failing to heed the state court order granting him a furlough to attend his sister's funeral, the defendants violated his Fourteenth Amendment right to due process. (Docket #70 at 18). This is so, according to the plaintiff, not because he has a constitutional right to a funeral furlough, but because Judge Boyle's order included mandatory language directing that he be temporarily released—which bears the hallmarks of a state-created liberty interest. *Id.*

  The defendants argue that the plaintiff had neither a constitutional right to a funeral furlough, nor is there "any Wisconsin statute, rule, or regulation that would provide him any *right* to attend his sister's funeral under any circumstances." (Docket #58 at 10). The defendants argue that the *absence* of any statute, regulation, or rule defining how furloughs from a jail are to be handled demonstrates "a clear intent by the state to avoid imposing substantive limitations on a sheriff's responsibility for taking the charge [sic] and custody of the jail." *Id.* at 11.

  To begin, the Seventh Circuit has clearly stated that federal law does not entitle a prisoner "to compassionate leave or for that matter even to have contact with their families in prison." *Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994) (citing *Merrit v. Broglin*, 891 F.2d 169 (7th Cir. 1989) and *Touissaint v. McCarthy*, 801 F.3d 1080, 1113 (9th Cir. 1986)). In addition, it is more than well-settled outside this circuit that prisoners have no constitutional right to leave prison to attend a funeral, "that is, denial of permission to attend a funeral does not implicate any constitutionally protected liberty interest." *Pierre v. LCS Corr. Servs., Inc.*, No. 10-CV-0024, 2010 WL 5559754, at *5 (W.D.

La. Oct. 20, 2010) (collecting cases); *see also Sorenson v. Minn. Dep't of Corr.*, No. 12-CV-1336, 2012 WL 3150722, at *3 (D. Minn. June 20, 2012) ("Federal courts have repeatedly held that prison inmates do not have a constitutional right to attend funerals" and collecting cases).

In addition, the Court has not found a single case finding that a pretrial detainee has a liberty interest in attending a family member's funeral. *See, e.g., Horton v. Shewmaker*, No. 07-CV-185, 2007 WL 1521601, at *2 (N.D. Ind. May 23, 2007) ("Pre-trial detainees have no constitutional right to attend funerals, even those of close family members."); *Cromer v. Administration of CCCF*, No. 14-CV-235, 2014 WL 1669867, at *2 (D.N.J. Apr. 28, 2014) (holding that denial of pretrial detainee's request to attend his mother's viewing did "not rise to the level of a constitutional magnitude"); *Walters v. Washington Cnty. Jail*, No. 07-CV-5113, 2007 WL 2710433, at *2 (W.D. Ark. Sept. 13, 2007) ("[T]here is no constitutional right for a detainee to be released from incarceration to attend a family member's funeral."). And, even a Court order does not change the calculus. *See Toman v. Mecklenburg Cnty. Sheriff's Dep't*, No. 08-CV-360, 2008 WL 3539273, at *1 (W.D.N.C. Aug. 11, 2008) (finding no constitutional when sheriff, despite a court order, failed to transport pretrial detainee to his mother's funeral); *Pegues v. Rogers*, No. 07-CV-93, 2007 WL 951896, at *2 (N.D. Ind. Mar. 27, 2007) ("If the defendants violated a valid court order requiring them to allow Mr. Pegues to attend his mother's funeral, that issue is more properly raised before the Court which issued the order. However, neither the violation of the court order or the failure to allow Mr. Pegues to attend the funeral deprived Mr. Pegues of the minimal civilized measure of life's necessities.").

In light of the overwhelming case law on this issue, it is clear that the plaintiff does not state a Fourteenth Amendment due process claim for a

violation of his constitutional rights. However, a protectable liberty interest can also arise from state law, *see Meritt*, 891 F.2d at 171-72 ("A liberty interest can arise from the Constitution or from state statutes, policies and practices."), and the plaintiff argues that his protectable liberty interest arises from Judge Boyle's order. While the Court believes this argument is not without some force, ultimately, the Court cannot agree.

To begin, the lack of any state statutes, regulations, or policies dealing with the instant scenario is fatal to the plaintiff's procedural due process claim. "In order for state regulations to create a constitutionally protected liberty interest, the regulations must employ 'language of unmistakably mandatory character, requiring that certain procedures shall, will, or must be employed…and that [the challenged action] will not occur absent specific substantive predicates, viz. the need for control, or the threat of a serious disturbance." *Colon v. Schneider*, 899 F.2d 660, 667 (7th Cir. 1990) (citing *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983)) (internal quotation marks omitted) (alteration in original).

It is axiomatic that if a funeral furlough is left entirely to the discretion of a court, there can be no liberty interest created. The total discretion of the court—given the absence of substantive predicates in statute, regulation, or rule—cannot give rise to a reliance interest on the part of the plaintiff. And, while the plaintiff keys on the mandatory language in Judge Boyle's order, this, in and of itself, does not create the liberty interest the plaintiff claims. This is so because there still remains the discretion of Sheriff Schmaling to heed—or in this case, not to heed—that court order. While it may seem odd to endorse the failure to heed a court order, which the Court is, to be sure, not doing, the Court is also not willing to delve into the intricacies of jail management. It is surely true that, despite a court order, jails will often be

unable to produce a prisoner for legitimate reasons—namely, institutional security, a lack of fair notice, the lack of personnel to complete the transport. The Court finds no law to support the notion that every failure of a state actor to heed a court order gives rise to a cognizable due process claim, absent substantive predicates and actual rules and regulations governing that state actor's conduct. *See Meritt*, 891 F.2d at 174 ("This is obviously an area of prison administration where courts should not read in restrictions on the exercise of executive discretion. Prison officials must be accorded broad discretion in determining whether prisoners will be allowed to temporarily leave an institution during their sentence."). With only discretionary decisions (without substantive predicates) at issue, the Court finds no procedural due process violation.

This is especially true given that the plaintiff admits that other detainees have been denied leave under similar circumstances. This eviscerates whatever remaining reliance the plaintiff placed on the Court order.

That said, the plaintiff's claim may sound more in substantive due process under the Fourteenth Amendment. Some courts have found that "[a] prison official's 'knowing refusal to obey a state court order affecting a prisoner's rights' would make that official liable 'for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment.'" *Johnson v. Coughlin*, 90-CV-1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997) (quoting *Arce v. Miles*, No. 85-CV-5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991) (internal quotation marks omitted)); *see Tasker v. Moore*, 738 F. Supp. 1005, 1010 (S.D. W. Va. 1990). But, this is still of no help to the plaintiff, because "[c]ases finding that prison officials violated a prisoner's substantive due process rights by ignoring a

state court order overwhelmingly involve orders directing the prisoner's release from custody or release from a segregation unit." *Hodge v. Perilli*, No. 06-CV-2480, 2010 WL 3932368, at *11 (S.D.N.Y. Sept. 30, 2010) (collecting cases). And, there is certainly a difference in kind between failing to release a prisoner or detainee from custody, and the failure to follow a court order to temporarily release a detainee for a family member's funeral. The former unequivocally infringes on a protected liberty interest—the right to be free from lawless incarceration—but the latter gives rise to no such concerns, given the absence of a liberty interest ab initio, as discussed above.

In light of the foregoing, the Court is obliged to grant the defendants summary judgment on the plaintiff's Fourteenth Amendment due process claim because the Court has found no violation of a constitutional right. Even if that were not the case, the Court would find that the defendants would be entitled to qualified immunity on this claim. Lacking a single case in support of the plaintiff's position, it is obvious that the plaintiff cannot show a clearly established right to a funeral furlough under these circumstances.

The Court notes that the remedy for Sheriff Schmaling's failure to follow Judge Boyle's order is with Judge Boyle himself. It is a court's duty to enforce compliance with *its own* orders. The remedy for a state court's failure to do so is not in a federal action alleging that state officials failed to follow their own procedural rules and heed their duties as officers of the Court.

4.2     The Plaintiff's Cruel and Unusual Punishment Claim

The plaintiff also alleges that the denial of his funeral furlough was cruel and unusual punishment, in violation of the Eighth Amendment. However, because the plaintiff was a pretrial detainee, his claim is cognizable under the Fourteenth and not the Eighth Amendment. *See, e.g., Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999) ("[W]e note that Henderson, as

Page 12 of 14

Case 2:13-cv-01333-JPS    Filed 09/17/15    Page 12 of 14    Document 76

a pretrial detainee, was protected by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies only to convicted persons.").

The Seventh Circuit has left open the possibility that the denial of a funeral furlough could constitute cruel and unusual punishment. *See Thomas*, 31 F.3d at 559. To sustain this theoretical constitutional violation, a plaintiff would need to show that "the granting of such leave w[as] customary and prison officials denied it on a particular occasion or to a particular prisoner in order to cause psychological distress, or with deliberate indifference to his mental health." *Id.* The plaintiff cannot meet this standard for two distinct reasons.

First, the defendants have shown, and the plaintiff admits, that it was not customary for the jail to permit such leave. Indeed, since 2013, there were numerous instances where leave was not granted, making such leave anything but customary. And, second, the plaintiff admits that he does not know why the defendants denied him leave, and alleges no malicious intent on the part of the defendants. (Docket #72 at ¶ 56). While the defendants' actions were surely insensitive and perhaps obtuse, there is no evidence that their actions were objectively malicious or intended to cause the plaintiff psychological harm. Because the plaintiff's claim fails on these two fronts, no reasonable jury could find that the defendants' actions were cruel and unusual punishment under the theoretical standard in *Thomas*. *See Spierer v. Rossman*, — F.3d —, No. 14-3171, 2015 WL 4772835, at *5 (7th Cir. Aug. 14, 2015) ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

In light of the foregoing, the defendants are entitled to summary judgment on the plaintiff's cruel and unusual punishment claim.

5. CONCLUSION

For all of the foregoing reasons, the Court will grant the defendants' motion for summary judgment (Docket #56).[3]

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #56) be and the same is hereby GRANTED and this matter be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[3]The defendants also argue that the plaintiff's claim cannot proceed under 42 U.S.C. § 1997(e) of the Prison Litigation Reform Act because the plaintiff has only alleged mental and emotional injury, and not physical injury. On this point, which needs no further discussion given that the Court has found no constitutional injury, the Court also agrees.